
RECEIVED
APR 2 4 2006
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 05-60067 |
| VERSUS | * | JUDGE DOHERTY |
| JAMIE EDELKIND | * | MAGISTRATE JUDGE METHVIN |

## REPORT AND RECOMMENDATION ON MOTION TO DISMISS
*(Rec. Doc. 40)*

Before the court is the motion to dismiss indictment filed by defendant Jamie Edelkind on April 3, 2006.[1] The government opposes the motion.[2] For the following reasons, **IT IS RECOMMENDED** that the motion be **DENIED**.

### *Factual Background*

Jamie Edelkind and Suzanne Boudreaux were married on June 4, 1988 in Venice, Italy. They established their matrimonial domicile in the State of Georgia, where they ultimately divorced on September 15, 1999. Following the divorce, the Superior Court of Cobb County in Georgia ordered that Edelkind pay child support payments to Boudreaux in the amount of $1,400.00 per month commencing on December 1, 1998. The government contends that Edelkind is in substantial arrears in his child support obligation, and at times has made payments using fake certified checks and fake cashier's checks.

On July 7, 2003, Judge David Blanchet of the Fifteenth Judicial District Court for the Parish of Lafayette, Louisiana entered an order stating that Edelkind's total arrearage of child support as of that date was $68,046.16. Judge Blanchet ordered that Edelkind serve 90 days in

---

[1] Rec. Doc. 40.

[2] Rec. Doc. 42.

jail for contempt. The government alleges that as of July 31, 2005, Edelkind's total arrearage was $77,936.31 in child support, $68,750.00 in spousal support, and $1,927.00 in medical support.

On October 12, 2005, Edelkind was indicted in this court on one count of willful nonpayment of child support in violation of 18 U.S.C. §228(a)(3). Edelkind seeks dismissal of the indictment on the following grounds: (1) this court does not have jurisdiction over the charge, as the statute under which he is charged, the Child Support Recovery Act (CSRA), violates the Commerce Clause of the United States Constitution; (2) the CSRA contains an impermissible presumption that relieves the government of proving every essential element of the crime with which he is charged; and (3) the federal five-year statute of limitations bars any and all conduct occurring prior to October 12, 2000.

*Law and Discussion*

I. <u>The Commerce Clause Challenge</u>

<u>The Commerce Clause</u>

The Commerce Clause delegates to Congress the power to "regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. 1, § 8, cl. 3. Although the Supreme Court initially defined Congress's Commerce Clause powers broadly, rejecting the suggestion that "commerce" is narrowly limited only "to traffic, to buying and selling, or the interchange of commodities," <u>Gibbons v. Ogden</u>, 22 U.S. (9 Wheat) 1, 189, 6 L.Ed. 23 (1824), in recent years, the Court has revisited the breadth of the power given to Congress by the Commerce Clause in enacting legislation. In <u>United States v. Lopez</u>, 514 U.S.

549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), the Supreme Court struck down the Gun-Free School Zones Act of 1990 as unconstitutional, and in the process, undertook an extensive analysis of the history of the Commerce Clause. The Lopez court succinctly summarized the scope of Congress's Commerce Clause powers, identifying three aspects of interstate commerce that Congress may regulate: (1) "the use of the channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "those activities having a substantial relation to interstate commerce." 514 U.S. 549, 557-58, 115 S.Ct. 1624, 1629.

### The CSRA

The Child Support Recovery Act (CSRA) punishes the "willful[ ] fail[ure] to pay a past due support obligation with respect to a child who resides in another State." 18 U.S.C. § 228(a). The statute defines "past due support obligation" as "any amount-(A) determined under a court order or an order of an administrative process pursuant to the law of a State to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living; and (B) that has remained unpaid for a period longer than one year, or is greater than $5,000." 18 U.S.C. §228(d)(1).

In United States v. Bailey, 115 F.3d 1222 (5th Cir. 1997), *cert. denied*, 522 U.S. 1082 (1998), the Fifth Circuit expressly held that the activity regulated by the CSRA falls within the first and second categories of permissible regulation as enunciated by Lopez and therefore found that the CSRA is a constitutional exercise of Congress's commerce powers. The court declined to reach the question of whether the CSRA may also be upheld under the third Lopez category.

Edelkind argues that the Fifth Circuit's decision in <u>Bailey</u> should no longer be considered precedent in light of the Supreme Court's rulings in <u>United States v. Morrison</u>, 529 U.S. 598, 120 SW.Ct. 1740, 146 L.Ed.2d 658 (2000) and <u>Jones v. United States</u>, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000). In <u>Morrison</u>, the Supreme Court struck down on Tenth Amendment grounds the civil remedy provisions of the Violence Against Women Act of 1994 (the "VAWA")[3] and warned against overly elastic conceptions of the Commerce Clause that would give Congress authority over "family law and other areas of traditional state regulation since the aggregate effect of marriage, divorce, and childrearing on the national economy is undoubtedly significant." In <u>Morrison</u>, because the petitioners did not contend that their case fell within either of the first two <u>Lopez</u> categories of Commerce Clause regulation, the court hinged its ruling on the third <u>Lopez</u> factor, finding that The Violence Against Women Act regulated activity that did not substantially affect interstate commerce. <u>Morrison</u>, 529 U.S. at 609, 120 S.Ct. at 1749.

In <u>Jones</u>, the Supreme Court held that in light of the Commerce Clause, the federal arson statute could not be construed to encompass the arson of a private, noncommercial dwelling. In so holding, the Court primarily relied upon principles of statutory, rather than constitutional, interpretation.[4] <u>Jones</u>, 529 U.S. at 858.

---

[3] The VAWA provides civil remedies against for victims of "crime [s] of violence motivated by gender,"42 U.S.C. § 13981(b), that is, "committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender,"42 U.S.C. § 13981(d)(1), against the perpetrators of such crimes.

[4] The court stated in <u>Jones</u>:

> Given the concerns brought to the fore in *Lopez*, it is appropriate to avoid the constitutional question that would arise were we to read § 844(i) to render the "traditionally local criminal conduct" in which petitioner Jones engaged "a matter for federal enforcement." *United States v. Bass*, 404 U.S. 336, 350, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). Our comprehension of § 844(i) is additionally reinforced by other interpretive guides. We have instructed that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity,"

Edelkind argues that a child support obligation is neither an instrumentality, person, nor a "thing" in interstate commerce, and therefore it cannot be the subject of federal control under the Commerce Clause, under the holdings of Morrison and Jones. In Bailey, however, the Fifth Circuit specifically held that "the child support obligation itself is a thing of commerce that has acquired an interstate character." Bailey, 115 F.3d at 1228, citing United States v. Mussari, 95 F.3d 787, 790 (9th Cir.1996) (concluding that the support obligation is a "thing" in interstate commerce because it must be met "by a payment that will normally move in interstate commerce-by mail, by wire, or by the electronic transfer of funds"). See also United States v. Bongiorno, 106 F.3d 1027, 1031 (1st Cir. 1997) (accord). As the Bailey court noted:

> This debt continues to move in interstate commerce as long as the obligor and obligee reside in different states and as long as the debt actually exists. Both the contemplated payment and the obligation, therefore, independently form the nexus to interstate commerce.

115 F.3d at 1228.

The Fifth Circuit has not changed its position that a viable child support obligation is a "thing" that can be the subject of interstate commerce. In United States v. Howard, 2002 WL 31689396, *2 (5th Cir. 2002), the defendant urged the court to do exactly what Edelkind is urging

---

*Rewis v. United States*, 401 U.S. 808, 812, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971), and that "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite," *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221-222, 73 S.Ct. 227, 97 L.Ed. 260 (1952). We have cautioned, as well, that "unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance" in the prosecution of crimes. *Bass*, 404 U.S., at 349, 92 S.Ct. 515. To read § 844(i) as encompassing the arson of an owner-occupied private home would effect such a change, for arson is a paradigmatic common-law state crime. See generally Poulos, The Metamorphosis of the Law of Arson, 51 Mo. L.Rev. 295 (1986).

Jones, 529 U.S. at 858.

this court to do, that is, to re-examine the Bailey decision in light of the Supreme Court's rulings in Morrison and Jones. In expressly rejecting Howard's request, the Fifth Circuit re-affirmed Bailey, noting that it "binds us absent an intervening contrary decision by the en banc court or the Supreme Court." Id. at *2, citing Brown v. United States, 890 F.2d 1329, 1336 (5th Cir.1989) (noting that under the "law of the circuit" rule, one Fifth Circuit panel may not overrule the decision, right or wrong, of a prior panel). The court went on to state:

> *Bailey* expressly sustained the CSRA under the first and second of the categories of commerce clause power outlined in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), and *Bailey* expressly declined to address the third *Lopez* category of commerce clause power. *Bailey* at 1226. *Morrison,* by contrast, addressed only the third *Lopez* category. *Morrison ,* 120 S.Ct. at 1749. *Jones* is likewise unavailing; it was decided as a matter of statutory construction, and it appears that the statute under consideration would have called for analysis under *Lopez* category three, not categories one or two. Accordingly, we reject appellant's commerce clause challenge to the CSRA on the basis of *Bailey,* which we are not free to reconsider.

Id. at *2.

The undersigned also notes that every circuit that has considered this issue has held that the CSRA is a constitutional exercise of the Commerce Clause. Notably, several of these cases were decided after Morrison and Jones. See United States v. Lewko, 269 F.3d 64 (1st Cir. 2001); United States v. Bongiorno, 106 F.3d 1027 (1st Cir. 1997); United States v. Sage, 92 F.3d 101 (2nd Cir. 1996); United States v. King, 275 F.3d 109 (2nd Cir. 2002) (reversing the decision of the district court, which had held that the CSRA violates the Commerce Clause, and reaffirming Sage despite the Court's holding in United States v. Morrison); United States v. Parker, 108 F.3d 28 (3rd Cir. 1997); United States v. Johnson, 114 F.3d 476 (4th Cir. 1997); United States v. Rich, 336 F.3d 293 (4th Cir. 2003) (declining to use Morrison to overrule Johnson's assertion that a state child support order is a "thing in interstate commerce"); United States v. Faasse, 265 F.3d

475 (6th Cir. 2001) (*en banc*); United States v. Namey, 364 F.3d 843 (6th Cir. 2004) (holding that the CSRA's failure to define "resides" does not render it unconstitutionally vague); United States v. Klinzing, 315 F.3d 803 (7th Cir. 2003); United States v. Black, 125 F.3d 454 (7th Cir. 1997); United States v. Crawford, 115 F.3d 1397 (8th Cir.), *cert. denied*, 522 U.S. 934 (1997); United States v. Craig, 181 F.3d 1124 (9th Cir. 1999), *cert. denied*, 120 S. Ct. 436 (1999); United States v. Mussari, 95 F.3d 787 (9th Cir. 1996), *rev'd on other grounds*, 152 F.3d 1156 (9th Cir. 1998); United States v. Monts, 311 F.3d 993 (10th Cir. 2002); United States v. Hampshire, 95 F.3d 999 (10th Cir.1996); United States v. Williams, 121 F.3d 615 (11th Cir. 1997), *cert. denied*, 523 U.S. 1065 (1998); United States v. Pillor, 387 F.Supp.2d 1053 (N.D.Cal. 2005).

Because this court is bound to follow circuit precedent, and because the undersigned concludes that the Morrison and Jones decisions do not abrogate the Bailey decision, the undersigned finds that the CSRA does not violate the Commerce Clause.

## II. Rebuttable Presumption

Edelkind contends that the rebuttable presumption under 18 U.S.C. §228(b) violates due process by relieving the government of its obligation to prove the essential element of a willful failure to pay child support. Section 228(b) states:

> **(b) Presumption.**--The existence of a support obligation that was in effect for the time period charged in the indictment or information creates a rebuttable presumption that the obligor has the ability to pay the support obligation for that time period.

18 U.S.C. §228 (b).

The government argues that the presumption is not problematic because it does not require the jury to presume *an element of the offense* (willfulness), but rather a *fact* (the ability to

pay), which the jury may then consider when determining whether the government proved the element of wilfulness. Nevertheless, the government notes that in United States v. Morrow, 368 F.Supp.2d 863, 866 (C.D.Ill.2005), the court severed this section of the statute, concluding that a presumption that the obligor had an ability to pay almost always directs a conclusion that the failure to pay was willful.

This issue has not yet been decided by any circuit court of appeals or the Supreme Court. Only four district courts have considered the issue in published opinions – Morrow, *supra*, United States v. Casey, 2006 WL 277092 (D. Neb.); United States v. Pillor, 387 F.Supp.2d 1053, 1057 (N.D.Ca.2005); and United States v. Grigsby, 85 F.Supp.2d 100, 108-09 (D.R.I.2000). In each case, §228(b) was found to be a mandatory presumption that violates due process by relieving the government of the obligation to prove every essential element of the crime. As a remedy, in each case, the courts severed §228(b) from the remainder of §228. As the court noted in Morrow, 368 F.Supp.2d at 866:

> Section §228(a)(3) is fully operative as a law without §228(b). This is evident from the fact that, until the 1998 amendment to the Act, §228 was in effect for a period of six years without the presumption." *Id.* at 109. Further, there is nothing in legislative history to suggest that Congress intended that the two provisions must work in tandem or not at all. *Id.* at 108. Accordingly, we hold that §228(a)(3) is valid even after §228(b) is severed from the statute.

After considering the arguments of counsel and consulting the existing jurisprudence on this issue, the undersigned finds persuasive the reasoning of the district courts which have addressed this issue. Accordingly, the undersigned concludes that §228(b) contains an unconstitutional mandatory presumption which relieves the government of its burden to prove every element of the charged conduct. It is therefore recommended that this court sever

subsection (b) from the remainder of 18 U.S.C. §228, and that no instruction be given to the jury as to the presumption contained in that subsection.

## III. <u>Statute of Limitations</u>

Edelkind contends that "all conduct occurring prior to October 12, 2000" is time-barred pursuant to the federal five-year statute of limitations.

Only one circuit – the Tenth – has addressed the issue of the applicable limitations period for the CSRA. In <u>United States v. Monts</u>, 311 F.3d 993, 999 (10th Cir. 2002), the court held that 18 U.S.C. §3282, which contains a five-year statute of limitations, is applicable to cases involving CSRA violations, to wit:

> As did the district court, we conclude that because 18 U.S.C. §228 contains no specific limitations period, *the default federal limitations period of five years provided by 18 U.S.C. § 3282 applies to the issue of whether the indictment itself was time-barred.* Section 3282 provides that for non-capital offenses, "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted ⋯ unless the indictment is found ⋯ within five years next after such offense shall have been committed." 18 U.S.C. §3282. The offenses charged were the failure to pay a support obligation which remained unpaid for longer than one year (Count 1) or longer than two years (Count 2). *Because we determined above that Mr. Monts' obligation to pay support was a viable obligation as determined by the Commonwealth of Virginia in 1996, we conclude that the offenses charged were committed within five years of the indictment, and as such, §3282 was no bar to the prosecution.*

Edelkind contends that, because he was indicted on October 12, 2005, any and all conduct that occurred before October 12, 2000 is barred by the statute of limitations. However, in <u>Monts</u>, the court began the limitations period from the date that the Virginia state court determined that the defendant had a viable obligation to pay child support, which was in 1996, *not* the date that the order of support was originally imposed, which was in 1975.

The undersigned finds that the reasoning of the court in <u>Monts</u> persuasive. Here, although Edelkind was originally ordered to pay child support on September 15, 1999 (with payments being due retroactive to December 1, 1998), it was not until July 7, 2003 that Judge David Blanchet ordered Edelkind had a viable child support obligation that was in arrearages in the amount of $68,046.16. Thus, under the <u>Monts</u> decision, the limitations period began to run on July 7, 2003. Because the indictment was filed on October 12, 2005, the undersigned concludes that the offense charged was committed within five years of the date the indictment, and, therefore, no conduct charged in the indictment is barred by the statute of limitations.

*Conclusion*

For the foregoing reasons, **IT IS RECOMMENDED** that Edelkind's motion to dismiss be **DENIED**.

**IT IS FURTHER RECOMMENDED** that this court sever subsection (b) from the remainder of 18 U.S.C. §228, and that no instruction be given to the jury as to the presumption contained in that subsection.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10)**

days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, on April 24, 2006.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

COPY SENT
DATE 4.24.06
BY mdh
TO RED
CG