UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE – OPELOUSAS DIVISION

JAMIE EDELKIND                          CRIMINAL NO. 05-cr-60067
                                        CIVIL ACTION NO. 09-cv-1783

VERSUS                                  JUDGE WALTER

UNITED STATES OF AMERICA                MAGISTRATE JUDGE HANNA


**REPORT AND RECOMMENDATION**

(Rec. Docs. 164, 167, 170, 172, 177)


Pending before this Court is Jamie Edelkind's *pro se* motion, brought pursuant to 28 U.S.C.

§ 2255, to vacate, set aside, or correct his sentence (Rec. Doc. 164), as amended (Rec. Doc. 167),

as re-urged (Rec. Doc. 170), as again re-urged (Rec. Doc. 172), and as duplicated (Rec. Doc. 177).

This matter was referred to the undersigned for review, report, and recommendation in

accordance with the provisions of 28 U.S.C. § 636 and the standing orders of this Court.  The

respondent was served and has filed an answer as well as a memorandum in response to the motion.

For the following reasons, it is recommended that the motion be DENIED.


**Factual Background**

Edelkind married Suzanne Boudreaux in 1988, and their son Sage was born in 1993.  They

lived in Atlanta, Georgia, where Edelkind operated a computer technology business.  Edelkind and

Boudreaux separated in 1997, executed a Settlement Agreement in 1998 that required Edelkind to

pay $1,400 per month child support payments, and were divorced in 1999.  The Settlement

Agreement was incorporated into the divorce decree, which  was made retroactive to 1998 (the

"1998 Judgment.")  In the 1998 Judgment, a Georgia court found Edelkind "in willful contempt" of his child support obligations and ordered him to repay the child support arrearage plus interest.

In 1998, Boudreaux and Sage moved to Louisiana.  Edelkind lived in Georgia until 1999, when he moved to Massachusetts.  Although Edelkind sent some checks to satisfy the child support arrearage in 1999, they were returned for insufficient funds.  Boudreaux sought assistance from the State of Louisiana to obtain child support payments.   In 2003, a judgment was rendered by a Louisiana court (the "2003 Judgment"), following a hearing at which both Boudreaux and Edelkind appeared.  The Louisiana court found Edelkind in contempt for his willful violation of child support orders and held that Edelkind owed approximately $70,000 in back child support.  He was sentenced to serve 90 days in jail unless he made an immediate payment of $25,000.  He made that payment but thereafter did not consistently make the ordered child support payments.

On October 12, 2005, Edelkind was indicted for willfully failing to pay child support in violation of the Child Support Recovery Act, 18 U.S.C. § 228, from December 1998 to the date of the indictment.  After a jury trial, Edelkind was convicted on June 16, 2006 of one count of willful nonpayment of child support in violation of 18 U.S.C. § 228(a)(3).  He was subsequently sentenced to serve twenty-four months in prison, to make restitution, and to pay a special assessment.  He is currently incarcerated.

Edelkind appealed his conviction and sentence, and the Fifth Circuit Court of Appeals affirmed.[1]  The United States Supreme Court denied his writ application.[2]  He then filed this motion pursuant to 28 U.S.C. § 2255.

---

[1]     *United States v. Edelkind*, 525 F.3d 388 (5th Cir. 2008).

[2]     *Edelkind v. United States*, 129 S.Ct. 246 (2008).

-2-

**Analysis**

Edelkind now seeks to vacate, set aside, or correct his sentence.[3]  He has articulated eleven grounds for the relief sought, claiming that none of these grounds were raised in his appeal.  For all but one of these grounds, he asserts that the failure to raise the issue prior to the filing of the instant motion is due to the ineffective assistance of his appellate counsel, Rebecca Hudsmith, the Federal Public Defender for the United States District Courts for the Middle and Western Districts of Louisiana.

**A.      Jury Interrogatories Regarding When the Defendant was in Willful Violation of any Order**

The only basis for relief articulated by Edelkind that is not an ineffective assistance of counsel claim is designated in his briefing as "Ground Ten."  In Ground Ten, Edelkind argues that the indictment was constructively amended, in violation of the Fifth and Sixth Amendments to the Constitution, by the trial court judge when (1) she failed to include in the jury interrogatories a request that the jury consider the issue of when Edelkind was in willful violation of any order, and (2) she instructed the jury with regard to the issue of willfulness.  Although Edelkind's argument is rather convoluted, it appears that his position is that the jury should have been asked to decide at what precise points in time he willfully violated the state courts' child support orders so that the statute of limitations and the two year time period referenced in the statute under which he was convicted could be applied to those specific time frames and so that the amount of any child support arrearage could be calculated only with regard to those precise dates.

---

[3]      Rec. Doc. 164, amended in Rec. Doc. 167, re-urged in Rec. Doc. 170, again re-urged in Rec. Doc. 172, and duplicated in Rec. Doc. 177.

The usual method of correcting trial errors is by appeal.[4]  When a constitutional error is not raised at trial, at sentencing, or on direct appeal, however, it may, under certain limited circumstances, be reviewed pursuant to a Section 2255 motion.  To obtain such collateral relief, the defendant must establish "both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."[5]

To establish "cause" for his procedural default, the defendant must show that "some objective factor external to the defense" prevented him from raising the issue on direct appeal.[6]  Objective factors might include interference by officials that makes compliance with the procedural rule impracticable, or a showing that the factual or legal basis for the claim was not reasonably available at the prior occasion, or ineffective assistance of counsel in the constitutional sense.[7]

To establish "actual prejudice," a defendant must demonstrate that, but for the error complained of, he might not have been convicted.[8]

If a defendant fails to demonstrate "cause" and "prejudice," collateral review remains available in a narrow class of cases in which the error involves a "fundamental defect which inherently results in a complete miscarriage of justice."[9]  On the other hand, however, if an issue is

---

[4]    *Sunal v. Large*, 332 U.S. 174, 177 (1947).

[5]    *U.S. v. Frady*, 456 U.S. 152, 167-68 (1982).

[6]    *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996), citing *Romero v. Collins*, 961 F.2d 181, 1183 (5th Cir. 1992) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

[7]    *U.S. v. Guerra*, 94 F.3d at 993.

[8]    *U.S. v. Guerra*, 94 F.3d at 994.

[9]    *United States v. Addonizio*, 442 U.S. 178, 185 (1979), quoting *Hill v. United States*, 368 U.S. 424, 428 (1962); *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).

raised and disposed of on appeal, that same issue cannot be considered again if raised in a subsequently-filed Section 2255 motion.[10]

Edelkind's Ground Ten falls into the latter category and, for that reason, it simply cannot be entertained by the court in connection with this Section 2255 motion.

The district court discussed with counsel the statute of limitations issue and the willfulness instruction in great detail and on numerous occasions both before trial and during trial.[11] The district court ultimately determined that the statute of limitations is a legal question to be resolved by the judge and is not a question for the jury.[12]  Therefore, she rejected instructing the jury on this issue. The record does not include any proposed jury interrogatory forms, so it is unclear what Edelkind might have proposed.  Based on the argument he now makes, however, the jury interrogatory form he claims to have proposed would have embodied two issues that were addressed to and rejected by the Fifth Circuit on appeal.

Edelkind argues that the alleged amendment to the indictment "was unconstitutional and permitted the jury to reach a conclusion as to conduct that would not otherwise be considered criminal."[13]  This mirrors his argument to the Fifth Circuit that "he could have been convicted for

---

[10]      See, e.g., *United States v. Webster*, 392 F.3d 787, 791 (5th Cir. 2004); *United States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997); *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions.")

[11]      See, e.g., transcript of pretrial conference of May 17, 2006.

[12]      Transcript IV, pp. 990-992.

[13]      Rec. Doc. 164 at 12.

acts that were outside the statute of limitations."[14]   At the appeals court, Edelkind argued that an improper jury instruction was given concerning the application of the statute of limitations to his offense.[15]   He also argued that § 228(a), the statute under which he was convicted, was not a continuing offense statute.   The court held that it was unnecessary to address the jury instruction concerning the statute of limitations because it found § 228(a) to be a continuing offense statute.[16]   At the appeals court, Edelkind also argued that an improper jury instruction was given concerning wilfulness.[17]   The appellate court found his argument unavailing.[18]

Thus, although the arguments made to the appellate court were not articulated in exactly the same way that Edelkind now articulates them, the substance of the jury instructions on willfulness and the statute of limitations were presented to the appellate court, and that court found no error. Because Edelkind already addressed these issues to the Fifth Circuit on appeal, he cannot now raise those same issues again.

Furthermore, if one were to assume that the difference in the articulation of the issues at the appellate court level and in support of the instant motion means that these issues were not presented on appeal, then Edelkind's failure to raise those issues on appeal is procedurally barred because he has not demonstrated cause or actual prejudice.   He has not explained why he did not raise the issues

---

[14]     *United States v. Edelkind*, 525 F.3d at 393.

[15]     *United States v. Edelkind*, 525 F.3d at 396, n. 6.

[16]     *United States v. Edelkind*, 525 F.3d at 396, n. 6.

[17]     *United States v. Edelkind*, 525 F.3d at 397.

[18]     *United States v. Edelkind*, 525 F.3d at 397-98.

on direct appeal, and he has not demonstrated that he was prejudiced in any way by his failure to raise the issues on appeal.

The undersigned finds that Ground Ten lacks merit.  Therefore, the undersigned recommends that, to the extent the instant motion seeks relief based on Ground Ten, the motion should be denied.

## B.   Allegedly Ineffective Assistance of Counsel

The other ten grounds for relief articulated in Edelkind's briefing are ineffective assistance of counsel claims.  The Sixth Amendment guarantees criminal defendants the "right to effective assistance of counsel at every critical stage of the proceedings against them."[19]  This right "is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense."[20]  Ineffective assistance of counsel claims are reviewed under a two-pronged test established by the United States Supreme Court.

To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate:  (1) that his attorney's representation was deficient because it fell below an objective standard of reasonableness; and (2) that the attorney's deficient performance prejudiced the defendant.[21]  The

---

[19]    *Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir. 2001).

[20]    *Yarborough v. Gentry*, 540 U.S. 1, 4 (2003) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)).

[21]    *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  See, also, *United States v. Franks*, 230 F.3d 811, 813 (5th Cir. 2000); *United States v. Garcia*, 77 F.3d 857, 859 (5th Cir. 1996).

defendant bears the burden of establishing both prongs of the test, and failure to establish either prong is fatal to the claim.[22]

In analyzing the first part of the test, judicial scrutiny of an attorney's performance must be "highly deferential," and the court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's alleged conduct, and to evaluate the conduct from counsel's perspective at the time."[23]  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[24]

In analyzing the second part of the test, prejudice is demonstrated only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[25]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[26]  Thus, to establish prejudice, Edelkind must show a reasonable probability that he would have prevailed on his appeal had his appellate counsel raised the issues he claims were omitted.[27]

The Constitution does not require an appellate attorney to advance every conceivable argument, regardless of merit.[28]  Instead, appellate counsel is required to raise and brief only those

---

[22]     *U.S. v. Franks*, 230 F.3d at 813; *Tucker v. Washington*, 115 F.3d 276, 281 (5th Cir. 1997).

[23]     *Strickland v. Washington*, 466 U.S. at 689.

[24]     *Strickland v. Washington*, 466 U.S. at 689.

[25]     *Strickland v. Washington*, 466 U.S. at 694.

[26]     *Strickland v. Washington*, 466 U.S. at 694.

[27]     *Smith v. Robbins*, 528 U.S. 259, 285-87 (2000).

[28]     *Evitts v. Lucey*, 469 U.S. 387, 394 (1985).

issues that counsel believes, in the exercise of professional judgment, to have the best chance of success.[29]

In this case, Edelkind claims that he was denied effective assistance of counsel because his appellate counsel failed to raise ten issues on appeal.  Keeping the foregoing principles in mind, each of Edelkind's ten alleged grounds for the ineffectiveness of counsel claim will be analyzed in turn.


**Ground One**

In Ground One, Edelkind argues that he lacked effective assistance of counsel because his appellate attorney allegedly failed to raise, on direct appeal, an issue concerning the sentencing court's calculation of his child support arrearage as including the time period between the date of the indictment (October 12, 2005) to the date of sentencing (January 9, 2007).  Edelkind also argues that his appellate counsel was ineffective for failing to raise an issue concerning the trial court's failing to consider, in connection with sentencing, that he was a resident of Louisiana at all times after November 14, 2005.  This second argument is repeated in Ground Three and is addressed in detail below.

Edelkind was convicted under the Child Support Recovery Act, 18 U.S.C. § 228.  The statute expressly provides for mandatory restitution "in an amount equal to the total unpaid support obligation as it exists at the time of sentencing."[30]  It thus appears that the restitution amount was properly calculated as required by the clear and unambiguous language of the statute.

---

[29]     See, e.g., *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999); *Willingham v. Cockrell*, 61 Fed. App'x 918 (5th Cir. 2003), citing *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983).

[30]     18 U.S.C. § 228(d).

The undersigned finds that, since the restitution amount was calculated in accordance with the statute, Edelkind has not demonstrated that his counsel's failure to raise this issue on appeal was anything other than a sound professional decision.  The undersigned further finds that Edelkind has not demonstrated that he was prejudiced by his counsel's failure to raise this ineffective argument on appeal because there is no evidence that the outcome of the appeal would have been different if this issue had been presented to the Fifth Circuit.  Ground One lacks merit.

**Ground Two**

In Ground Two, Edelkind argues that he was denied effective assistance of counsel because his appellate counsel allegedly failed to raise, on direct appeal, the alleged fraud of the assistant U.S. attorney in representing to the trial court that this was a complex matter involving voluminous documents that tolled the application of the Speedy Trial Act.  This ground is not based on an accurate representation of what was and was not presented on appeal.  Although the Fifth Circuit was not asked to determine whether the prosecutor made any fraudulent representations concerning the complexity of the trial or the number of documents involved, the Fifth Circuit did in fact consider – and resolve – whether Edelkind's rights under the Speedy Trial Act were violated.

The Speedy Trial Act[31] requires a defendant to be tried within seventy days of indictment unless an exception applies.  One exception applies when the trial court judge grants a continuance upon finding that the ends of justice served by continuing the trial outweigh the public's and the

---

[31]        18 U.S.C. §§ 3161(c)(1), *et seq*.

defendant's interest in a speedy trial.[32]  "[A] district court's finding that a case is complex constitutes a sufficient ground to satisfy the statutory requirements for such a continuance."[33]

In this case, the Fifth Circuit reviewed the trial court record, and it expressly found that "there is sufficient basis for the district court's conclusion that the case is complex; there is no clear error."[34]  Thus, even if Edelkind were correct and the lawyer who represented him with regard to his appeal had failed to raise this issue on appeal – which is not supported by the record – his counsel's conduct in that regard would not have been deficient.  It would have been a sound professional judgment.  But the record demonstrates that this issue was presented to the Fifth Circuit on appeal, and it was resolved by the Fifth Circuit, which found that continuing Edelkind's trial because of the complexity of the matter was an error-free ruling.  When an issue is raised and disposed of on appeal, that same issue cannot be considered if raised again in a subsequently-filed Section 2255 motion.[35]  For that reason, the undersigned finds that the issue concerning the continuance of the trial date and the impact of the continuance on Edelkind's rights under the Speedy Trial Act cannot be considered at this time.  Ground Two lacks merit.

---

[32]     18 U.S.C. § 3161(h)(8)(A).

[33]     *United States v. Edelkind*, 525 F.3d at 397, citing *United States v. Bieganowski*, 313 F.3d 264, 181 & n. 15 (5th Cir. 2002).

[34]     *United States v. Edelkind*, 525 F.3d at 397.

[35]     *United States v. Webster*, 392 F.3d at 791; *United States v. Rocha*, 109 F.3d at 229; *United States v. Kalish*, 780 F.2d at 508.

**Ground Three**

In Ground Three, Edelkind argues that he was denied effective assistance of counsel because his appellate counsel allegedly failed to raise, on direct appeal, a defense based on the trial court's allegedly having lost subject matter jurisdiction when Edelkind relocated to Louisiana.  Edelkind was indicted under and charged with violating 18 U.S.C. § 228(a)(3), which makes it a criminal offense to willfully fail to pay a child support obligation with respect to a child who resides in another state, if such obligation has remained unpaid for more than two years or is greater than $10,000.  Edelkind argues that once he and the child for whom the support obligation was to be paid resided in the same state, this court no longer had subject matter jurisdiction over the alleged crime.  Edelkind cites no statutory or jurisprudential authority for that position, and the undersigned has located none.

Under 18 U.S.C. § 3231, "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."  Thus, federal courts "always have jurisdiction when a federal offense is charged."[36]  "The grand jury's issuance of an indictment is what gives federal courts jurisdiction to hear a criminal case and impose a sentence."[37]  Although the statute under which Edelkind was charged makes it a criminal offense for an obligor in one state to willfully fail to pay child support to a child residing in another state, those residency requirements are elements of the crime that must be proven at trial, but they are not predicates to the court's subject matter jurisdiction.

---

[36]    20 Fed. Prac. & Proc. Deskbook § 22.

[37]    *U.S. v. Longoria,* 259 F.3d 363, 365 (5th Cir. 2001).

Edelkind's argument is that the indictment does not validly charge him with a crime because of a change in his residency.[38]   Therefore, he is actually alleging that the indictment is defective, which is not a jurisdictional challenge.  "[A] district court has jurisdiction of all crimes cognizable under the authority of the United States and the objection that the indictment does not charge a crime against the United States goes only to the merits of the case."[39]

The undersigned finds that, in Ground Three, Edelkind has not articulated a valid subject matter jurisdiction claim.  Therefore, the undersigned further finds that Edelkind cannot establish either prong of his ineffective assistance of counsel claim with regard to Ground Three:  he cannot demonstrate that his appellate counsel's failure to raise this issue on direct appeal was unreasonable nor can he demonstrate that he was prejudiced by his counsel's failure to raise this issue.  Ground Three lacks merit.

**Ground Four**

In Ground Four (and again in Ground Eight), Edelkind argues that he was denied effective assistance of counsel because his appellate counsel allegedly failed to raise, on direct appeal, an issue regarding the validity of the child support order issued in Georgia in 1998.  That, however, is incorrect.  Edelkind's position that the 1998 Judgment was null at the time of his conviction was

---

[38]    As an aside, the undersigned finds that Edelkind has not presented evidence establishing his residency at all material times.

[39]    *U.S. v. Cotton*, 535 U.S. 625, 630-631 (2002) [internal quotation omitted].  See, also, *United States v. Williams*, 341 U.S. 58, 66 (1951) ("that the indictment is defective does not affect the jurisdiction of the trial court to determine the case presented by the indictment.")

-13-

reviewed – and rejected – by the Fifth Circuit on appeal.  In discussing Edelkind's argument

concerning the jury instruction given at trial on willfulness, that court said:

> Edelkind testified that he believed the 1998 Judgment was invalid....
> Edelkind now suggests that the failure to give the proposed
> instruction impaired his ability to contend that he had a good-faith,
> albeit unreasonable, belief that he did not wilfully violate the child
> support order because he believed the order was no longer binding.
> However, this defense, as a matter of law, is not a valid defense.
> Edelkind's proposed instruction would apply if his defense had
> involved ignorance of what the law actually required.   Here,
> Edelkind's defense does not involve the ignorance of what the law
> actually required when the law itself was unclear, but an unreasonable
> self-belief that a known court order was invalid and thereby not
> binding on him.[40]

The court went on to explain that it is impermissible to attack an underlying state court child support

order while being prosecuted in federal court under Section 228.[41]

    Thus, there are two reasons why Ground Four lacks merit.  First, the Fifth Circuit expressly

held that the validity of the underlying child support order could not be challenged.  Consequently,

if Edelkind's appellate counsel had not raised that issue on appeal, her decision in that regard would

have been a sound one.  Secondly, however, it is clear from the Fifth Circuit's ruling that the issue

was, in fact, raised and resolved on appeal.  When an issue is raised and disposed of on appeal, that

same issue cannot be considered if raised again in a subsequently-filed Section 2255 motion.[42]  For

that reason, the undersigned finds that the issue of the validity of the 1998 Judgment cannot be

considered at this time.  Therefore, Ground Four lacks merit.

---

[40]     *U.S. v. Edelkind*, 525 F.3d at 389 [internal citations omitted].

[41]     *U.S. v. Edelkind*, 525 F.3d at 389.

[42]     *United States v. Webster*, 392 F.3d at 791; *United States v. Rocha*, 109 F.3d at 229;
*United States v. Kalish*, 780 F.2d at 508.

**Ground Five**

In Ground Five, Edelkind argues that he was denied effective assistance of counsel because his appellate counsel allegedly failed to raise, on direct appeal, an alleged structural error arising from the public being barred from observing all aspects of jury selection.  The Sixth Amendment to the Constitution guarantees a defendant the right to a trial that is open to members of the public.[43] This constitutional guarantee is for the defendant's benefit because a trial is more likely to be fair when the watchful eye of the public is present.[44]  But a defendant's right to a public trial is neither limitless[45] nor absolute.[46]  To the contrary, this right "may give way in certain cases to other rights or interests."[47]  In particular, the government's interest in inhibiting the disclosure of sensitive information may outweigh a defendant's right to a public trial.[48]  Trial closures should, however, be "rare and only for cause shown that outweighs the value of openness."[49]  A closure may be justified only by "an overriding interest based on findings that closure is essential to preserve higher values

---

[43]      *Waller v. Georgia*, 467 U.S. 39, 46 (1984).

[44]      See, e.g., *In re Oliver*, 333 U.S. 257, 270 (1948); *Gannett Co. v. DePasquale*, 443 U.S. 368, 380 (1979).

[45]      *Lacaze v. United States*, 391 F.2d 516, 521 (5th Cir. 1968).

[46]      *Waller v. Georgia*, 467 U.S. at 45.

[47]      *Waller v. Georgia*, 467 U.S. at 45.

[48]      *Waller v. Georgia*, 467 U.S. at 45.

[49]      *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 509 (1984); *Waller v. Georgia*, 467 U.S. at 47.

and is narrowly tailored to serve that interest."[50]  The right to a public trial may also be waived by the defendant.[51]

One well-recognized exception to the right to a public trial, which is relevant to the instant case, is presented when there is an interest in inhibiting the disclosure of sensitive information.[52]  In this case, because of the sensitive nature of the subject matter – family dynamics, divorce, and child support – part of the *voir dire* was conducted *in camera* rather than in open court.  The trial court judge prepared a questionnaire that was distributed to the prospective jurors.  The prospective jurors filled out the questionnaire in writing, the written responses were reviewed by the judge, and follow-up discussion was held privately in the judge's chambers.[53]  The judge explained that this procedure was necessitated by the personal and sensitive nature of the topics inquired about on the questionnaire.[54]  Only a small portion of the entire *voir dire* process was closed to the public.  The prospective jurors were all questioned in open court concerning general matters.  The only part of the *voir dire* that was conducted *in camera* was discussion of the sensitive subject matter addressed in the questionnaires.

---

[50]    *Press-Enterprise v. California*, 464 U.S. at 510; *United States v. Antar*, 38 F.3d 1348, 1361 (3rd Cir. 1994).

[51]    See, e.g., *Singer v. United States*, 380 U.S. 24, 35 (1965).

[52]    *Waller v. Georgia*, 467 U.S. at 45; *Bell v. Jarvis*, 236 F.3d 149, 165 (4th Cir. 2000), *cert. denied sub nom.*, *Bell v. Beck*, 534 U.S. 830 (2001).

[53]    Transcript, Volume I at 3, 21-22, 44-46.

[54]    Transcript, Volume I at 3, 21-22, 44-46.

Edelkind complains that this procedure was an inappropriate closure of the courtroom that violated his Sixth Amendment right to a public trial. Edelkind further argues that the holding of *Presley v. Georgia*[55] mandates reversal of his conviction and sentence because of this structural error.

First, *Presley* is inapplicable because it was decided long after Edelkind was tried. Edelkind was tried and convicted in 2006, and he was sentenced in January 2007.[56] The *Presley* decision was not rendered until January 2010 – more than three years later. "[W]hether the performance of counsel was deficient is based upon the law as it existed at the time of trial."[57] Defense counsel has no duty to anticipate changes in the law and normally is not expected to foresee future new developments in the law.[58]

Two post-*Presley* courts were presented with arguments similar to Edelkind's, and both rejected it. "Nowhere in Presley does the Supreme Court announce that any part of its holding should apply retroactively on collateral review. Nor has it so held in any subsequent opinion."[59] Furthermore, since Edelkind couches his argument in terms of ineffective assistance of counsel, the *Presley* ruling cannot possibly have guided his counsel's decision-making at the time of trial. As noted in another post-*Presley* proceeding, "[a] 2010 case has no impact on the calculus counsel

---

[55]       ___ U.S. ___, 130 S.Ct. 721 (2010).

[56]       Rec. Doc. 69, 70, 71, 72, 73, 133.

[57]       *Lucas v. Johnson,* 132 F.3d 1069, 1078 (5th Cir. 1998).

[58]       See, e.g., *United States v. Fields*, 565 F.3d 290, 295-96 (5th Cir. 2009); *Morse v. State of Texas,* 691 F.2d 770, 772 (5th Cir. 1982); *Nelson v. Estelle,* 642 F.2d 903, 908 (5th Cir. 1981).

[59]       *Julian v. Commonwealth of Pennsylvania*, 2010 WL 1854121, 4 (W.D. Pa. 2010). See, also, *Chalk v. Rhode Island*, 2010 WL 597463, 5 (D.R.I. 2010) ("Nor does Presley announce that any part of its holding should apply retroactively on collateral review.")

performed in 2002."[60]  Consistently, a 2010 case – *Presley* – had no impact on the calculus utilized by Edelkind's counsel in defending him back in 2006 and cannot form the basis of an ineffective assistance counsel of claim.

Second, the requirements for a valid courtroom closure that existed at the time of Edelkind's trial were satisfied in this case.  In *Waller v. Georgia*, the court said the party seeking to close the courtroom:

> must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.[61]

It is clear from the transcript of the proceedings that this was done in this case.  The trial court judge clearly expressed her purpose in preparing a questionnaire, requesting that the potential jurors complete the questionnaire, and guaranteeing to the jurors that the questionnaires would be destroyed after the trial, and advising that any discussion of the answers to the questionnaires that was necessary for jury selection would occur *in camera*.[62]  The closed portion of the *voir dire* was only a small part of the overall *voir dire* process, and the need for it was articulated by the trial court judge in open court.[63]  Absent the use of the questionnaire and the discussion of the highly personal issues addressed in the questionnaire in a private and confidential setting, the defendant may not have been assured of an unbiased jury.  The brief closure of the courtroom was designed to aid the court and

---

[60]   *Chalk v. Rhode Island*, 2010 WL at 5 fn. 2.

[61]   *Waller v. Georgia*, 467 U.S. at 48.

[62]   Transcript Vol. I at 3, 21-22, 44-46.

[63]   Transcript Vol. I at 3, 44-46.

the parties in selecting an impartial jury.  By providing confidentiality to the prospective jurors with regard to sensitive personal issues, the court was able to foster their providing complete and honest answers to certain questions directly related to the nature of the offense with which Edelkind was charged.  Thus, the undersigned finds that the procedure was narrowly-tailored to the specific situation.  Even *Presley* reiterated that there are exceptions to a defendant's right to a public trial and that the government's interest in inhibiting the disclosure of sensitive information is a valid exception.[64]  That valid exception was held to be present in this case.

Third, and perhaps most important, Edelkind waived his right to a public trial.  Neither Edelkind nor the government prosecutor requested that the questionnaires be used or that any part of the *voir dire* be conducted in chambers.  When the trial court judge proposed that methodology, however, neither side objected.  In fact, both sides expressed their strong approval of the procedure. The following colloquy occurred among the trial court judge and counsel:

| | |
|---|---|
| THE COURT: | You should each have a copy of the juror questionnaire that we created and had the jurors fill out.  Because of the unique nature of the crime in this matter, I felt that I would need to go into this on voir dire, and I felt it was such a personal matter people would probably not want to discuss this publicly, so we created the juror questionnaire.  It has been handed out to each of the jurors.  They are filling it out as we speak.  Each of you will be given a copy of that.  Any objections from either counsel to the use of the questionnaire or any questions contained on that questionnaire? |
| MS. FINLEY:[65] | Judge, I would note they do this in the northern part of the district all the time.  There are a lot of issues that |

_____

[64]     *Presley v. Georgia*, 130 S.Ct. at 724.

[65]     Ms. Finley is the assistant United States attorney who prosecuted the case.

-19-

|                     | they are more comfortable when they write it on a form. |
|---------------------|---------------------------------------------------------|
| THE COURT:          | Any objection?                                          |
| MR. McCANN:[66]     | No objection.  In fact, I like it.  I'm glad you thought of it.[67] |

Therefore, not only was there no objection from Edelkind's counsel, his counsel actually assured the trial court judge that he approved of the procedure.  This was a clear and unambiguous waiver of any objection that Edelkind might possibly have to the partial courtroom closure for a portion of the *voir dire* procedure.

When a defendant has knowledge that the courtroom will be closed and he fails to object to the closure, the defendant waives his right to a public trial.[68]  A defendant's attorney's waiver of the right to a public trial is effective on the defendant.[69]  It is only when there is no waiver that a courtroom closure can violate the Sixth Amendment.[70]

In this case, it is clear that Edelkind waived his right to a public trial with regard to the limited courtroom closure employed while juror questionnaires were filled out and reviewed. Edelkind has not demonstrate that he was prejudiced in any way by the court's decision not to

---

[66]     Mr. McCann was Edelkind's trial counsel.

[67]     Transcript, Volume I at 3.

[68]     See, e.g., *Levine v. United States*, 362 U.S. 610, 618-19 (1960); *Singer v. United States*, 380 U.S. at 35; *United States v. Guzman*, 271 Fed. App'x 442, 444 (5th Cir. 2008); *United States v. Hitt*, 473 F.3d 146, 155 (5th Cir. 2006); *Lacaze v. United States*, 391 F.2d at 520-21.

[69]     *United States v. Hitt*, 473 F.3d at 155, citing *United States v. Sorrentino*, 175 F.2d 721, 723 (3rd Cir. 1949) and *Martineau v. Perrin*, 601 F.2d 1196, 1200-01 (1st Cir. 1979).

[70]     *United States v. Hitt*, 473 F.3d at 155 n. 8, citing *Levine v. United States*, 362 U.S. at 618-19.

-20-

publicly air, in open court, certain personal details of the potential jurors' private lives.  His counsel was able to review the questionnaires and to make decisions about the composition of the jury based on the information set forth in the questionnaires.  Therefore, he was not deprived of the opportunity to select an impartial jury.  To the contrary, the use of the questionnaires and the confidential discussion with some of the potential jurors of their responses to the questionnaires, was for the purpose of helping to assure that Edelkind's right to an unbiased jury was protected.  Edelkind should not now be permitted to argue that his Sixth Amendment right to a public trial was violated when he waived that right.

This case can also be distinguished from *Presley* on a fundamental factual basis.  In *Presley*, a member of the defendant's family was physically shut out of the courtroom during the jury selection process.  In this case, however, no one has come forward and complained that they were barred from being present during the portion of the *voir dire* that was conducted in chambers.  Only Edelkind – who was not denied access – has complained.  Further, that complaint was not made at the time of trial, and even now, aside from other prospective jurors, Edelkind has not identified anyone who was denied access because of the limited *voir dire* conducted in chambers that was specifically directed to the sensitive personal issues disclosed in the questionnaires.

Finally, Edelkind argues that his appellate counsel was ineffective for failing to raise this issue on appeal.  Although counsel should certainly assert all "solid, meritorious arguments," counsel has no obligation to raise every potential basis for appeal.[71]  "On appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available.

---

[71]     *U.S. v. Williamson*, 183 F.3d 458, 462-463 (5th Cir. 1999).

Rather, it means, as it does at trial, counsel performing in a reasonably effective manner."[72] Similarly, an attorney's failure to raise a meritless argument cannot form the basis of a successful ineffective assistance of counsel claim because assertion of the claim would not change the result of the proceeding.[73]  Thus, deciding not to assert a Constitutional violation on appeal when the issue was affirmatively waived at trial is a sound professional judgment.

The undersigned finds that *Presley* is inapplicable to this matter, that the trial court judge's actions satisfied the requirements of *Waller*, and that Edelkind has not demonstrated that he was prejudiced by the limited courtroom closure that he now complains about.  The undersigned further finds that Edelkind waived his right to a public trial by failing to object, at trial, to the closure of the courtroom during a portion of the *voir dire* procedure.  The undersigned also finds that Edelkind's appellate counsel was not deficient in failing to raise the issue of the courtroom closure during *voir dire* on appeal.  Ground Five lacks merit.

### Ground Six

Ground Six is wholly repetitive of other grounds.  Therefore, the undersigned finds that Ground Six is resolved by reference to other sections of this report and recommendation.

### Ground Seven

------

[72]     *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998) (internal citation omitted).

[73]     *U.S. v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).  See, also, *Evitts v. Lucey*, 469 U.S. at 394.

In Ground Seven, Edelkind argues that he was denied effective assistance of counsel because his appellate counsel allegedly failed to raise, on direct appeal, the unconstitutionality of the statute under which he was convicted.  Edelkind claims that, because a presumption set forth in the statute has been held unconstitutional, the entire statute is unconstitutional.  But numerous courts have upheld the severability of that particular provision,[74] and the undersigned finds the jurisprudence persuasive.  For that reason, the undersigned finds that the unconstitutional presumption contained in the statute does not render the entirety of the statute unconstitutional.

Edelkind also argues that the statute's restitution provision is unconstitutional because the amount of restitution was not presented to the jury for determination.  But the Fifth Circuit has held that judicial fact-finding supporting restitution orders does not violate the Sixth Amendment.[75]

Edelkind again argues that a change in his residence should have been raised on appeal.  That argument is the subject of Ground Three and should be resolved as explained in that portion of this report.

The undersigned finds that Edelkind's appellate counsel was not deficient in failing to raise the unconstitutionality of the statute under which he was convicted on appeal and further finds that Edelkind has not established that he was prejudiced by her decision in that regard.  Ground Seven lacks merit.


**Ground Eight**

---

[74]    *United States v. Morrow*, 368 F.Supp.2d 863, 866 (C.D. Ill. 2005); *United States v. Casey*, 2006 WL 277092 (D. Neb. 2006); *United States v. Pillor*, 387 F.Supp.2d 1053, 1057 (N.D. Ca. 2005); *United States v. Grigsby*, 85 F.Supp.2d 100, 108-109 (D. R.I. 2000).

[75]    *United States v. Garza*, 429 F.3d 165, 170 (5th Cir. 2005).

In Ground Eight, Edelkind reiterates the argument he made in support of Ground Four that he was denied effective assistance of counsel because his appellate counsel allegedly failed to raise, on direct appeal, the alleged nullity of the 1998 Judgment.  Ground Eight must, therefore, be resolved in the same manner as Ground Four, above.

**Ground Nine**

In Ground Nine, Edelkind argues that he was denied effective assistance of counsel because his appellate counsel allegedly failed to raise, on direct appeal, an issue concerning double jeopardy. Edelkind contends that he received criminal punishment for violating the 1998 Judgment, which should trigger his constitutional double jeopardy protections and preclude his being convicted, under federal law, for violating that same judgment.

The Fifth Amendment to the Constitution affords protection against double jeopardy by forbidding multiple punishments for the same act.[76]  Although Edelkind contends that his federal court prosecution under 18 U.S.C. § 228 for willful violation of the 1998 Judgment is duplicative of prosecution in the State of Georgia for violation of that same judgment, the record contains no evidence that he was prosecuted or punished in Georgia for violating the 1998 Judgment.  For that reason, Edelkind has not proven that there was a prior prosecution or prior punishment that might form a predicate for double jeopardy.

---

[76]    *U.S. v. Buchanan*, 485 F.3d 274, 278-79 (5th Cir. 2007).

Furthermore, "[i]t is well-established that a double jeopardy claim cannot be raised when an individual is prosecuted for the same act that violates the laws of dual sovereigns."[77]  "Two different sovereigns may prosecute a person for a single act that violates their respective laws."[78]  A federal prosecution following a state prosecution might violate the Constitution only if the "federal prosecution was a sham or tool of the state prosecution."[79]  In this case, there certainly is no evidence that this exception to the general rule might be applicable.  Therefore, even if Edelkind actually was prosecuted and punished in Georgia for violating the 1998 Judgment – which has not been established on the record in this case – his subsequent prosecution in federal court under a federal statute proscribing the same activity would not trigger his double jeopardy protections.  Consequently, Edelkind's double jeopardy claim has no merit.

Because the double jeopardy claim lacks merit, it would be unreasonable to think that articulating this defense on appeal might have resulted in Edelkind's conviction and sentence being overturned.  For that reason, the undersigned finds that Edelkind's appellate counsel was not deficient for failing to raise the double jeopardy issue on appeal.  The undersigned further finds that Ground Nine lacks merit.

**Ground Eleven**

---

[77]     *U.S. v. Moore*, 958 F.2d 646, 650 (5th Cir. 1992), citing *Heath v. Alabama*, 474 U.S. 82, 89-90 (1985).

[78]     *U.S. v. Cothran*, 302 F.3d 279, 285 (5th Cir. 2002), citing *Heath v. Alabama*, 474 U.S. at 88-89.

[79]     *U.S. v. Cothran*, 302 F.3d at 285, quoting *United States v. Moore*, 958 F.2d 646, 650 (5th Cir. 1992).

In Ground Eleven, Edelkind claims that he was denied effective assistance of counsel because he was not permitted to represent himself on appeal.  But there is no federal constitutional right to self-representation on direct appeal from a criminal conviction.[80]  Therefore, the undersigned finds that Ground Eleven lacks merit.

## Conclusion

For the reasons stated above,

**IT IS RECOMMENDED** that Edelkind's motion to vacate, set aside, or correct his sentence (Rec. Doc. 164), as amended (Rec. Doc. 167), as re-urged (Rec. Doc. 170), as again re-urged (Rec. Doc. 172), and as duplicated (Rec. Doc. 177) be **DENIED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this report and recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with a copy of any objections or response to the District Judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court,

---

[80]     *Martinez v. Court of Appeal of California*, 528 U.S. 152, 163 (2000).  See, also, *Willingham v. Cockrell*, 61 Fed. App'x 918 (5th Cir. 2003).

-26-

except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79

F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, this 28th  day of June, 2010.


Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)